Joshua B. Swigart (SBN 225557)
Josh@SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA  92108
P: 866-219-3343
F: 866-219-8344

*Attorneys for Plaintiff and the*
*Putative Class*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| HEATHER SWEENEY, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br><br>LIFE ON AIR, INC. & EPIC GAMES, INC.,<br><br>Defendant. | CASE NO.:  '20CV0742 BAS BLM<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**<br>(1) NEGLIGENCE<br>(2) VIOLATION OF CAL. BUS. & PROF. CODE § 17200<br>(3) BREACH OF IMPLIED CONTRACT<br>(4) UNJUST ENRICHMENT<br>(5) PUBLIC DISCLOSURE OF PRIVATE FACTS<br>(6) VIOLATION OF CALFORNIA CONSUMER PRIVACY ACT<br>(7) VIOLATION OF CONSUMER LEGAL REMEDIES ACT |

1

1. Named Plaintiff HEATHER SWEENEY ("Plaintiff"), bring this class action on behalf of themselves individually and all others similarly situated, by and through their attorneys, against Defendants LIFE OF AIR, INC. and EPIC GAMES, INC. (collectively as "Defendants" or "Houseparty") and allege upon information and belief as follows:

## INTRODUCTION

2. Plaintiff alleges as follows upon personal knowledge and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

3. Civil Code § 56.36(b) provides Plaintiffs, and all other persons similarly situated, with a private right to bring an action against Defendant for violation of Civil Code § 56.101 by specifically providing that "[i]n addition to any other remedies available at law, any individual may bring an action against any person or entity who has negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following: (1) ... nominal damages of one thousand dollars ($1,000). In order to recover under this paragraph*, it shall not be necessary that the plaintiff suffered or was threatened with actual damages*. (2) The amount of actual damages, if any, sustained by the Plaintiff" (Emphasis added.)

4. This class action is brought on behalf of Plaintiffs and a putative class ("the Class") defined as:

Subclass 1:

All citizens of the State of California who accessed the Houseparty application and routinely discloses users personally identifiable information ("PII") to unauthorized third parties, including social media network Facebook, Inc. without customer consent from January 1,2020 to April 17, 2020.

2

Subclass 2:

All citizens of the State of California who accessed the Houseparty application and routinely discloses users personally identifiable information ("PII") to unauthorized third parties, including social media network Facebook, Inc. without customer consent from on or January 1, 2020 to April 17, 2020.

5.  Houseparty is a social networking app that allows multiple people to video chat at once in a virtual room. Houseparty states that "users can have infinite rooms and easily float between rooms. Unlike Factime, you don't need to call someone. Users receive notification when friends open the app and can join chats with friends."[1]  The Defendant promises customers that its application allows them to "connect with anyone you want" and promise that "Houseparty is secure" and further promises that there has been "no data breaches and no exposure of customer data or third-party accounts."[2]

6.  Although Houseparty praises themselves on its application aiding in social distancing amid the coronavirus global pandemic and keeping customer data secure, Houseparty has failed to disclose to customers that it routinely discloses their personally identifiable information ("PII") to unauthorized third parties, including social media network Facebook, Inc. without customer consent.

7.  Houseparty customers can access the application through mobile applications, as well as through desktop computer, tablets, and telephones. The Houseparty application is available on iOS, Android, Mac, PC, and as a Google Chrome Extension.[3]

---

[1] FAQ for Houseparty, https://houseparty.com/faq/ (Last Accessed April 17, 2020).

[2] Houseparty Update, https://houseparty.com/blog/houseparty-update/ (Last Accessed April 17, 2020).

[3] FAQ for Houseparty, https://houseparty.com/blog/houseparty-update/ (Last Accessed April 17, 2020).

Class Action Complaint

8. As alleged in greater detail below, upon a user downloading and opening the Houseparty application, they are prompted to connect their Facebook account.

9. Each time a Houseparty customer opened the application, Defendants would notify Facebook that the user had opened the app, details on the user's device allows Facebook and other third parties to target the user with specific advertisements according to the unique advertiser identifier (also known as "IDFA") that is assigned to each user.

10. Upon information and belief, Defendants provide customer PII to other unauthorized third parties for use in targeted advertising without consent.

11. Defendant's conduct invaded the reasonable expectations of its customers and took advantage of customers with predatory business practices.Plaintiff downloaded and accessed the Houseparty application. Plaintiff was harmed when Defendants disclosed Plaintiff's PII to third parties without consent.

12. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in its entirety.

13. Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives

**JURISDICTION AND VENUE**

14. This Court has jurisdiction over thus action under 28 U.S.C. § 1332(d) of the Class Action Fairness Act ("CAFA") because the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, with at least one member of the proposed Class being a citizen of a different state than Defendant.

15. Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the County of San Diego, State of California; (ii) the conduct complained of herein occurred within this judicial district; and (iii) many of the

Class Action Complaint

acts and transactions giving rise to this action occurred in this district because Defendant:

a) is authorized to conduct business in this district and has intentionally availed itself to the laws and markets within this district;

b) does substantial business within this district;

c) is subject to personal jurisdiction with this district because it has availed itself of the laws and markets within this district; and

d) the harm to Plaintiff occurred within this district.

## PARTIES

16. Plaintiff is, and at all times mentioned herein was, an individual citizen and resident of the State of California, County of San Diego, in this judicial district. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39) and Cal. Civ Code § 1788.2(g). Plaintiff is also a "consumer" as defined by 15 U.S.C. § 1692a(3) and a "debtor" under Cal. Civ Code § 1788.2(h). Plaintiff uses an Apple iOS device to access the Houseparty application. Plaintiif has downloaded, installed, and accessed the iOS version of the Houseparty application. At all times, Plaintiif was not aware, and did consent to Houseparty sharing Plaintiff's personal information with third parties and, upon information and belief, other third parties which included a unique advertising identifier assigned to Plaintiff's device that allows advertisers to specifically target the Plaintiff. If Plaintiff had learned about Houseparty's actual data sharing policies and the sale of Plaintiff's personal information, Plaintiff would not have used the Houseparty application. Plaintiff did not consent to the sharing of his PII or any unauthorized party. Plaintiff has no knowledge that Defendants had authorized this disclosure of Plaintiff's information and did not consent to it.

17. Defendant LIFE OF AIR, INC. a subsidiary of EPIC GAMES, INC., is, and at all times mentioned herein was, a foreign corporation registered in Delaware. Plaintiff alleges that at all times relevant herein it conducted business in the State of California, in the County and City of San Diego, within this judicial district. It is, and at all times mentioned herein was, a "person," as defined by Cal. Civ. Code § 1788.2(g).  It operates as a collection company and is a "debt collector" as defined by Cal. Civ. Code § 1788.2(c) and 15 U.S.C. §1692a(6).

18. Defendant EPIC GAMES, INC., is, and at all times mentioned herein was, a corporation registered in Maryland with its principal place of business located at 620 Cross Roads Blvd, Cary, North Carolina, 27518. Plaintiff alleges that at all times relevant herein it conducted business in the State of California, in the County and City of San Diego, within this judicial district.  It is, and at all times mentioned herein was, a "person," as defined by Cal. Civ. Code § 1788.2(g).  It operates as a collection company and is a "debt collector" as defined by Cal. Civ. Code § 1788.2(c) and 15 U.S.C. §1692a(6).

## FACTUAL ALLEGATIONS

19. Houseparty is a social networking app that allows multiple people to video chat at once in a virtual room. Houseparty states that "users can have infinite rooms and easily float between rooms. Unlike Factime, you don't need to call someone. Users receive notification when friends open the app and can join chats with friends."[4]

20. Millions of people around the world use Houseparty every day to connect their friends and family. Defendants understand the vital need for secure

---

[4] *Id.*

Class Action Complaint

communications. Defendants boast that their application is "secure" and "there has been no data breaches or exposure of customer data."[5]

21. Due to the novel coronavirus and the impact of this global pandemic, stay at home orders increased the demand for the remote videoconferencing services and "online human connections"[6] as millions of people transitioned to connecting online. Defendants reported that it had hosted a company record of more than 50 million daily meeting participants in March alone.

22. Furthermore, with this sudden exponential increase in remote videoconferencing, consumer's personal information are even more vulnerable to data misues and security breaches from third parties.

23. Houseparty promises to its customers that "Houseparty has not ever sold your data and will not ever sell your data. Ever."[7] Despite its claimed commitment to user privacy and security, in fact, unbeknownst to its customers, Defendants disclosed their PII to unauthoirized third parties without customers consent.

24. Upon downloading and opening the app, Defendants would send customer information and analytics to Facebook's software development kits ("SDK").

25. Defendants send customer information and analytics using Facebook SDK's which are listed as Third Party Licenses, however, fail to both notify and receive consent from customers.

26. Defendants do not disclose that portions of customers information relating to cookies available to third parties or Houseparty's use of customer's information in connection with similar advertising technologies or retargeting activites.

---

[5] Houseparty Update, https://houseparty.com/blog/houseparty-update/ (Last Accessed April 17, 2020).

[6] *Id.*

[7] Id.

Class Action Complaint

27. Houseparty allows users to log into the application through a Facebook plugin which enabled Facebook to gather PII that included personal identifiers, IP addresses, timezone details, phone carrier, and device information on all Houseparty users, regardless if the customer had a Facebook account. Most concerning, a unique advertiser identifier (also known as "IDFA") is created by the customer's device which allows companies to target the user with specific advertisements.

28. The IDFA is particularly invasive to customers because each device is assigned a unique identifier that is directly tied to each individual user. IDFAs are uniquw, alphanumeric strings that are used to identify an individual device- and the individual who uses that device to track and profile the user.

29. Key digital privacy and consumer groups have descrived why and how an identifier like the IDFA facilitates targeted advertising and is not "anonymous". With the IDFA marketers do not need to know the name, address, or email of a particular user in order identify, target, and contract that particular user.[8]

30. Advertisers use this information to learn about users, including when and how they access the application, customer's location, along with their behaviors, demographics, and preferences, so that they can serve them with tailored and targeted advertising.

31. This information has tremendous economic value. Moreover, the disclosure of PII makes users more vulnerable to fraud and other based-harms. Due to an exponential influx of users who adhering to the Stay At Home order caused by the novel coronavirus pandemic, this vulnerability has become a reality without

---

[8] Comments of The Center for Digital Democracy, FTC, In the Matter of Children's Online Privacy Protection Rule at 13-14 (Dec. 23, 2011), *available at* https://www.democraticmedia.org/sites/default/files/COPPA%20Rule%20Comments%2 0of%20Children%27s%20Privacy%20Advocates.pdf

Class Action Complaint

millions of users knowing. Houseparty's data-sharing activity was not visible to the user, who simply opened the application. Houseparty users were not informed of the actions involving users PII and had no opportunity to express or withhold consent to Houseparty's conduct. Thus, users were deprived of their right to opt out of their personal information being accessed and sold to third parties.

32. Furthermore, users could not detect this activity from the app itself, and Hoseparty does not allow them to monitor whether it is sharing their PII, users of Houseparty have no reasonable way of knowing when they open the app, their PII will be safeguarded or disclosed without their consent.

33. Defendants completely failed to inform its users that, as they opened the app, Defendants were intentionally disclosing their PII to  Facebook and other third parties for targeted advertising.

34. Houseparty's Privacy Policy disclosed that it collected certain categories of personal data about users, including information commonly used to identify you, such as "your name, user name, password, email address, email address, phone numbers, and other similar identifiers"; Houseparty also collects information about your interactions with and on the application such as "information about how long you chat with your friends, purchase items, we collect information about what you purchase."[9] Additionally, if a user links social media accounts to the application, Houseparty collects information on "social media account information" and if a user links their contacts, Defendants "collect information about your friends, like their phone numbers and addresses."[10] Houseparty also collects location information such as zip code, state, IP address, and location

---

[9] *Id.*

[10] *Id.*

Class Action Complaint

information, device information, what site a user came from, what site a user is on when they leave the application, and device identifiers.[11]

35. This was no reference to Facebook it its privacy policy, and Zoom did not disclose that it was not only itself collecting information from Facebook, but it was also disclosing information about its users to Facebook.

36. Defendants never disclosed that it was providing third parties like Facebook which are not "advertising parties", with sufficient PII to actually identify users and track their engagement with online advertising.[12]

37. The Defendant promises customers that its application allows them to "connect with anyone you want" and promise that "Houseparty is secure" and further promises that there has been "no data breaches and no exposure of customer data or third-party accounts."[13]Houseparty violated its promises to its customers with these predatory business practices without users authorization or consent and breached Plaintiff's expectations of privacy.

38. Defendant's conduct violated its users' privacy in a significant way.

39. The ability to serve targeted advertisements to (or otherwise profile) a specific user does not turn on the ability to obtain the kinds of PII with which most consumers are familiar—name, email address, etc. Instead, it is accomplished through the surreptitious collection and disclosure of identifiers like the IDFA and device information shared by Defendants which are used to build robust online profiles. But consumers do not want companies like Defendants to share their PII with third parties for advertising purposes without first obtaining their express consent.

---

[11] *Id.*

[12] *Id.*

[13]Houseparty Update, https://houseparty.com/blog/houseparty-update/ (Last Accessed April 17, 2020).

Class Action Complaint

40. The sharing of PII for advertising purposes with Facebook, in particular, is especially egregious given the serious defects in Facebook's handling of consumer information. Facebook's entire business model is premised on sharing personal information and content with third parties for advertising purposes. And Facebook has acknowledged that it shares personal information of Facebook users with app developers and advertisers, who make billions of dollars from monetizing data.[28] Numerous lawsuits are currently pending against Facebook regarding its disclosure of significant quantities of user information to third parties without their consent, and Facebook has faced enforcement action from the Federal Trade Commission and Congressional investigation regarding its misuse of user data.[14]

41. But even Facebook urged Defendants to share the fact that it was disclosing users' PII with Facebook. Facebook's Business Tools terms of use state that if an application like Houseparty is using Facebook's software development kit, "you further represent and warrant that you have provided robust and sufficiently prominent notice to users regarding the customer data collection, sharing, and usage."[15] Facebook further states that apps must explain that "third parties, including Facebook, may collect or receive information from [the app] and other apps that use that information to provide measurement services and targeted ads," and include links showing "how and where users can opt-out"[16] did not display these disclosures or offer a link to Facebook's data collecting activity, or give users the opportunity to opt out.

---

[14] *See, e.g.*, *In re Facebook*, F.T.C. No. 092-3184, Case No. 19-cv-2184 (D.D.C.); *see also In Re: Facebook, Inc. Consumer Privacy User Profile Litig.*, Case No. 18-md-02843-VC (N.D. Cal.).

[15] *Id.*

[16] *Id.*

Class Action Complaint

42. Thus, Houseparty's conduct in sharing customers' PII with unauthorized third parties like Facebook in order to assist in the tracking and profiling of them across multiple platforms was an egregious breach of their trust and of social norms.

43. Had consumers including Plaintiff known the truth about Houseparty's information sharing practices—that Houseparty would share their PII without their consent—they would not have entrusted their PII to Houseparty and would not have been willing to use the Houseparty application. As such, Plaintiff and class members did not receive the benefit of their bargain with Houseparty because they paid for a value of services, either through PII or a combination of their PII and money, they expected but did not receive.

## CLASS ACTION ALLEGATIONS

44. Plaintiffs bring this action on behalf of themselves individually and on behalf of all others similarly situated. The putative class ("the Class") that Plaintiffs seeks to represent is composed of two subclasses:

Subclass 1:

All citizens of the State of California who accessed the Houseparty application and routinely discloses users personally identifiable information ("PII") to unauthorized third parties, including social media network Facebook, Inc. without customer consent from January 1,2020 to April 17, 2020.

Subclass 2:

All citizens of the State of California who accessed the Houseparty application and routinely discloses users personally identifiable information ("PII") to unauthorized third parties, including social media network Facebook, Inc. without customer consent from on or January 1, 2020 to April 17, 2020.

45. Excluded from the Class are any of Defendants' officers, directors, employees, affiliates, legal representatives, attorneys, heirs, and assigns, and any entity in

12

1   which Defendants have a controlling interest. Judicial officers presiding over

2   this case, its staff, and immediate family members, are also excluded from the

3   Class.

4   46. The members of the Class are so numerous that joinder of all members is

5   impracticable. While the exact number of the Class members is unknown to

6   Plaintiffs at this time, such information can be ascertained through appropriate

7   discovery, from records maintained by Defendants.

8   47. There is a well-defined community of interest among the members of the Class

9   because common questions of law and fact predominate, Plaintiffs' claims are

10  typical of the members of the class, and Plaintiffs can fairly and adequately

11  represent the interests of the Class.

12  48. Common questions of law and fact exist as to all members of the Class. These

13  questions predominate over questions that may affect only individual Class

14  Members because Defendants have acted on grounds generally applicable to the

15  Class. Such common and legal factual questions include:

16  a.  Whether Defendants' acts and practices complained of herein amount to

17  egregious breaches of social norms;

18  b.  Whether Defendants violated Plaintiff's and Class Members' privacy rights;

19  c.  Whether Defendants acted negligently;

20  d.  Whether Plaintiff and the Class Members were harmed;

21  e.  Whether Defendants intruded upon Plaintiff's and the Class Members'

22  seclusion;

23  f.  Whether Defendants and Plaintiff formed implied contracts;

24  g.  Whether Defendants breached implied contracts with Plaintiff and the Class

25  Members;

26  h.  Whether Defendants' conduct was unfair;

27  i.  Whether Defendants' conduct was fraudulent;

28

13

Class Action Complaint

j.  Whether Defendants omitted or misrepresented material facts regarding the PII of Plaintiffs and Class Members it shared with third parties, including Facebook;

k.  Whether Defendants owed duties to Plaintiff and Class Members to disclose that it was sharing their PII with third parties, including Facebook;

l.  Whether Plaintiff and the Class Members are entitled to equitable relief, including, but not limited to, injunctive relief, restitution, and disgorgement; and

m.  Whether Plaintiff and the Class Members are entitled to actual, statutory, punitive or other forms of damages, and other monetary relief.

49. Plaintiffs' claims are typical of those of the other Class members because Plaintiffs, like every other Class member, were exposed to virtually identical conduct and are entitled to nominal damages of one thousand dollar ($1,000) per violation pursuant to Civil Code §§ 56.101 56.36(b)(1), and actual damages, if any, per violation pursuant to Civil Code §§ 56.101, 56.36(b)(2).

50. Plaintiffs will fairly and adequately protect the interests of the Class. Moreover, Plaintiffs have no interest that is contrary to or in conflict with those of the Class they seek to represent during the Class Period. In addition, Plaintiffs have retained competent counsel experienced in class action litigation to further ensure such protection and intend to prosecute this action vigorously.

51. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the Defendants in the State of California and would lead to repetitious trials of the numerous common questions of fact and law in the State of California. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a

14

1    class action is superior to other available methods for the fair and efficient

2    adjudication of this controversy.

3    52. Proper and sufficient notice of this action may be provided to the Class members

4    through direct mail.

5    53. Moreover, the Class members' individual damages are insufficient to justify the

6    cost of litigation, so that in the absence of class treatment, Defendants' violations

7    of law inflicting substantial damages in the aggregate would go unremedied

8    without certification of the Class. Absent certification of this action as a class

9    action, Plaintiffs and the members of the Class will continue to be damaged by

10   the unauthorized release of their individual identifiable medical information.

## FIRST CAUSE OF ACTION
### NEGLIGENCE

54. Plaintiff incorporates by reference all of the above paragraphs of this Complaint
as though fully stated herein.

55. Defendants provided services to Plaintiff, including the ability to participate in
allegedly secure videoconferences. The transactions between Defendants and
Plaintiff are intended to benefit the Plaintiff by providing them the ability to use
the Houseparty application for all of the purposes Plaintiff expected and which
were intended by Defendants.

56. Defendants owed a duty to Plaintiff to exercise reasonable care in the obtaining,
using, and protecting of Plaintiff's personal information, arising from the
sensitivity of Plaintiff's information shared via Houseparty and Plaintiff's
reasonable expectation that the information would not be shared with third parties
without Plaintiff's consent. This duty included Houseparty ensuring that no
unauthorized third parties, including Facebook, were improperly given Plaintiff's
PII.

Class Action Complaint

57. Plaintiff's use of Houseparty was predicated on the understanding that Houseparty would take appropriate measures to protect their information. Houseparty had a special relationship with Plaintiff as a result of being entrusted with Plaintiff's content and personal information, which provided an independent duty of care.

58. It was entirely foreseeable to Defendants that Plaintiff would be harmed if Defendants disclosed their PII to third parties for advertising purposes.

59. There is a close connection between Defendants' failure to adequately safeguard Plaintiff's privacy and the injuries suffered. But for Defendants' acts and omissions in maintaining inadequate security, Plaintiff's PII would not have been shared with Facebook and other unauthorized third parties.

60. Defendants' conduct also involves moral blame. Aware of the privacy expectations of its customers, and the sensitive nature of the information shared during videoconferences intended to be private, Defendants did not take sufficient actions to prevent the unauthorized disclosure of PII.

61. Defendants breached its duty to Plaintiff when it disclosed their PII to unauthorized third parties like Facebook.

62. Plaintiff was harmed by Defendants' failure to exercise reasonable care in safeguarding their PII, and that harm was reasonably foreseeable.

## SECOND CAUSE OF ACTION
### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW ("UCL")

63. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

64. Plaintiff would continue using Houseparty's application if Plaintiff could be assured that Defendants would take adequate security measures to protect their PII going forward.

Class Action Complaint

65. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200. Defendants have engaged in business acts and practices that, as alleged above, constitute unfair competition in violation of Business and Professions Code section 17200

66. Defendants' acts, as described herein, are "fraudulent" because they are likely to deceive the general public.

67. Defendants' business practices, as alleged herein, violate the "unfair" prong of the UCL because they offend an established public policy and are immoral, unethical, and unscrupulous or substantially injurious to consumers.

68. The reasons, justifications, or motives that Defendants may offer for the acts and omissions described herein are outweighed by the gravity of harm to the victims. The injuries suffered by Plaintiff are substantial and are not outweighed by any countervailing benefits to consumers or competition.

69. Defendants' business practices described herein also violate the UCL because Defendants falsely represented that goods or services have characteristics they do not have, namely, good security; falsely represented that its goods or services are of a particular standard when they are of another; advertised its goods and services with intent not to sell them as advertised; represented that the subject of a transaction was supplied in accordance with a previous representation when it was not; and/or made material omissions regarding its safeguarding of customer PII.

70. As a result of Defendants' unfair business practices, Plaintiff suffered injury.

71. If Defendants are permitted to continue to engage in the unfair and fraudulent business practices described above, its conduct will engender further injury, expanding the number of injured members of the public beyond its already large size, and will tend to render any judgment at law, by itself, ineffectual. Under such circumstances, Plaintiff has no adequate remedy at law in that Defendants

17

will continue to engage in the wrongful conduct alleged herein, thus engendering a multiplicity of judicial proceedings. Plaintiff requests and is entitled to injunctive relief, enjoining Defendants from engaging in the unfair and fraudulent acts described herein.

72. Had Plaintiff known the truth about Houseparty's information sharing practices—that Houseparty would share their PII without their consent—they would not have entrusted their PII to Houseparty and would not have been willing to use Houseparty's application. As such, Plaintiff did not receive the benefit of their bargain with Houseparty because they paid for a value of services, either through PII or a combination of their PII and money, they expected but did not receive.

73. The basis for Plaintiff's claims emanated from California, where the primary decisions regarding Defendants' security and privacy practices were made.

### THIRD CAUSE OF ACTION
### BREACH OF IMPLIED CONTRACT

74. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein.

75. Defendants offered its videoconferencing capabilities to Plaintiff. In exchange, Defendants received benefits in the form of monetary payments and access to Plaintiff's valuable personal information.

76. Defendants have acknowledged these benefits and accepted or retained them.

77. Implicit in the exchange of the products and services for the benefits provided by Plaintiff is an agreement that Defendants would safeguard their personal information.

78. Without such implied contracts, Plaintiff would not have paid for and conferred benefits on Defendants, but rather would have chosen an alternative

Class Action Complaint

videoconference platform that did not share their PII with undisclosed and unauthorized third parties.

79. Plaintiff fully performed the obligations under the implied contracts with Defendants, but Defendants did not.

80. Defendants breached their implied contracts with Plaintiff when it disclosed their PII to unauthorized third parties like Facebook. These circumstances are such that it would be inequitable for Defendants to retain the benefits received.

81. As a direct and proximate result of Defendants' breach of its implied contracts with Plaintiff, Plaintiff have suffered and will suffer injury.

82. Had consumers including Plaintiff known the truth about Houseparty's information sharing practices—that Houseparty would share their PII without their consent—they would not have entrusted their PII to Houseparty and would not have been willing to use the Houseparty application. As such, Plaintiff did not receive the benefit of their bargain with Houseparty because they paid for a value of services, either through PII or a combination of their PII and money, they expected but did not receive.

### FOURTH CAUSE OF ACTION
#### UNJUST ENRICHMENT

83. Plaintiff incorporates by reference the above paragraphs of this complaint.

84. Defendants have profited and benefited from the use of its videoconferencing services by Plaintiff in exchange for monetary benefits and access to PII.

85. Defendants have voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of the misconduct and omissions described herein, Plaintiff did not receive products of the quality, nature, fitness or value represented by Defendants and that reasonable consumers expected.

86. Defendants have been unjustly enriched by its withholding of and retention of these benefits, at the expense of Plaintiff.

87. Equity and justice militate against permitting Defendants to retain these profits and benefits.

88. Plaintiff suffered injury as a direct and proximate result of Defendant's unjust enrichment and seek an order directing Defendants to disgorge these benefits and pay restitution to Plaintiff.

### FIFTH CAUSE OF ACTION
### INVASION OF PRIVACY (PUBLIC DISCLOSURE OF PRIVATE FACTS)

89. Plaintiff incorporates by reference the above paragraphs of this complaint.

90. Plaintiff has a reasonable expectation of privacy in Plaintiff's PII, Plaintiff's devices and Plaintiff's online behavior generally. Plaintiff's private affairs include Plaintiff's behavior on Plaintiff's devices, including Plaintiff's use of Houseparty's products and services, and any other behavior that may be monitored by the data gathered by Defendants and disclosed to unauthorized parties such as Facebook.

91. The reasonableness of such expectations of privacy is supported by Defendants unique position to monitor Plaintiff's behavior through its access to Plaintiff's private devices and videoconferences. The surreptitious, highly technical, and non-intuitive nature of Defendants disclosure of their PII further underscores the reasonableness of their expectations of privacy.

92. Plaintiff's privacy interest is legally protected because they have an interest in precluding the dissemination or misuse of sensitive information and an interest in making intimate personal decisions and conducting activities like videoconferencing without observation, intrusion, or interference.

93. Defendants shared Plaintiff's PII with unauthorized third parties, including Facebook, without Plaintiff's permission or consent.

94. Defendants' acts and omissions caused the exposure and publicity of private details about Plaintiff—matters that are of no concern to the public

Class Action Complaint

95. This intrusion is highly offensive to a reasonable person. Defendants' actions alleged herein are particularly egregious because Defendants concealed its conduct from Plaintiff and because Defendants represented to Plaintiff that it took their privacy seriously.

96. Plaintiff was harmed by the public disclosure of their private affairs.

97. Defendants' actions were a substantial factor in causing the harm suffered by Plaintiff.

98. As a result of Defendants' actions, Plaintiff seeks damages, including compensatory, nominal, and punitive damages, in an amount to be determined.

### SIXTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA'S CONSUMER PRIVACY ACT

99. Plaintiff incorporates by reference the above paragraphs of this complaint.

100. Plaintiff is a "consumer" under Cal. Civ. Code §1798.140(g)

101. Defendants are both a "business" under Cal. Civ. Code §1798.140(c)(1)(A).

102. Personal information is defined under Cal. Civ. Code §1798.140(o)(1) California's Consumer Privacy Act ("CCPA") effective January 1, 2020 protects consumers' personal information from collection, use, or sale by businesses without consumers' notice and consent. Defendants violated the CCPA by using customers' PII without providing the required notice under the CCPA. *See* Cal. Civ. Code § 1798.100(b). Defendants did not notify Plaintiff that it was collecting, using, or selling Plaintiff's PII to unauthorized third parties like Facebook.

103. Defendants also violated the CCPA by failing to provide notice to its customers of their right to opt-out of the disclosure of their PII to unauthorized third parties like Facebook. *See* Cal. Civ. Code § 1798.120(b). Defendants did

not give Plaintiff the opportunity to opt out before it provided their PII to unauthorized third parties like Facebook.

104.     Defendanst also violated the CCPA by failing to provide a a clear and conspicuous link on the business's Internet homepage or mobile app, titled "Do Not Sell My Personal Information," to an Internet Web page that enables a consumer, or a person authorized by the consumer, to opt-out of the sale of the consumer's personal information. *See* Cal. Civ. Code § 1798.135(a)(1).[17]

105.     Defendants also violated the CCPA by failing to use any personal information collected from the consumer in connection with keeping their personal information private. *See* Cal. Civ. Code § 1798.135(a)(B)(6).

106.     Plaintiff seeks injunctive relief in the form of an order enjoining Defendants from continuing to violate the CCPA, as well as actual damages.

## SEVENTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA") CIV. CODE §§ 1750

107.     Plaintiff incorporates by reference the above paragraphs of this complaint.

108.     Plaintiff is a "consumer" under Cal. Civ. Code § 1761(d).

109.     Defendantw are both "person(s)" as defined by Cal. Civ. Code § 1761(a). Defendants' sale of its app was the sale of a good to consumers under Cal. Civ. Code §§ 1761(e) and 1770(a).

110.     The CLRA protects consumers against unfair and deceptive practices, and is intended to provide an efficient means of securing such protection.

111.     Defendantw violated the CLRA by engaging in unfair and deceptive practices and by causing harm to Plaintiff.

---

[17] Houseparty Privacy Policy, https://houseparty.com/privacy/ (Last Accessed April 17, 2020).

112.     Defendants disclosed Plaintiff's sensitive PII to unauthorized third parties like Facebook for advertising purposes. But Defendant did not disclose this practice to consumers or obtain their consent to sell or disclose their data.

113.     Defendants' failure to disclose this practice violated the CLRA in multiple ways:

a. Defendants represented that its product had characteristics it did not have, Cal. Civ. Code § 1770(a)(5);
b. Defendants represented its products were of a particular standard, grade, or quality when they were of another, *id.* § 1770(a)(7);
c. Defendant advertised its products with intent not to sell them as advertised, *id.* § 1770(a)(9);
d. Defendants knowingly and intentionally withheld material information from Plaintiff and the Class Members, *id.* § 1770(a)(14).

114.     Defendants' unfair or deceptive acts or practices were capable of deceiving a substantial portion of the public. It did not disclose the facts of its disclosure of PII because it knew that consumers would not use its products, and instead would use other products, if they knew the truth.

115.     Defendants had a duty to disclose the truth about its privacy practices because it is in a superior position to know whether, when, and how it discloses sensitive PII to third parties; Plaintiff could not reasonably have been expected to learn or discover Defendants' disclosure of their PII to unauthorized parties like Facebook; and Defendants knew that Plaintiff would not use its products if they knew the truth.

116.     The facts concealed by Defendants or not disclosed by Defendants are material in that a reasonable consumer would have considered them to be important in deciding whether to use Defendants' products.

117.     Plaintiff reasonably expected that Defendants would safeguard their PII and not disclose it without their consent.

118.     Due to Defendants' violations of the CLRA, Plaintiff and the Class Members suffered injury.

119.     Had consumers including Plaintiff known the truth about Houseparty's information sharing practices—that Houseparty would share their PII without their consent—they would not have entrusted their PII to Houseparty and would not have been willing to use, pay for, or pay as much for, the Houseparty application. As such, Plaintiff did not receive the benefit of their bargain with Houseparty because they paid for a value of services, either through PII or a combination of their PII and money, they expected but did not receive.

120.     Plaintiff seeks an injunction barring Houseparty from disclosing their PII without their consent.

### PRAYER FOR RELIEF

Wherefore, Plaintiff, individually and on behalf of the Class Members, respectfully requests the Court grant Plaintiffs and the Class  the following relief against Defendants:

a.   That the Court determine that this action may be maintained as a Class Action by certifying this case as a Class Action as to both Subclass 1 and 2;

b.   That the Court appoint Plaintiffs to serve as the Class Representatives in this matter and appoint Plaintiffs' Counsel as Class Counsel

c.   That Plaintiffs and the Class be awarded prejudgment interest, reasonable attorneys' fees, and costs of suit pursuant to Code of Civil Procedure §1021.5 and California Civil Code § 1780, and/or any other applicable law;

d.   That Defendant's wrongful conduct alleged herein be adjudged and decreed to violate the statutes and laws asserted herein;

Class Action Complaint

e.  That Plaintiffs and the Class be awarded injunctive relief prohibiting such conduct in the future; and

**As to Counts I through VI:**

f.  Awarding Plaintiff nominal, actual, compensatory, consequential, and punitive damages;

g.  Awarding Plaintiff pre-judgment and post-judgment interest;

h.  Awarding Plaintiff reasonable attorneys' fees, costs, and expenses; and

i.  Granting such other relief as the Court deems just and proper.

**Demand for Jury Trial**

121.    Pursant to the Seventh Amendment of the U.S. Consitution, Plaintiffs demand a trial by jury.

Date:  April 17, 2020                    **SWIGART LAW GROUP, APC**

By:  s/ Joshua B. Swigart
Joshua B. Swigart, Esq.
Josh@SwigartLawGroup.com

Attorneys for Plaintiff

25